UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No: 6:10-bk-19152-ABB

In re:

JEFFREY ALLAN HARTZELL,
        Debtor.
_____/

## DEBTOR'S PLAN OF REORGANIZATION

The Debtor, Jeffrey Allan Hartzell, is an individual. All of the funding of the Plan of Reorganization shall come from the disposable income of the Debtor for a period of five years, commencing on the effective date of the Plan, to the payment of allowed claims as is necessary for the execution of the plan. The Debtor hereby submits the following Plan of Reorganization.

## DEFINITIONS

The following terms, when used in the Plan, shall have the following meanings unless the context otherwise requires.

1.    Debtor: Hereinafter, Jeffrey Allan Hartzell, shall be referred to as "Debtor". The term "Debtor" shall include the Reorganized Debtor under the Order of Confirmation.

2.    Plan: This Plan of Reorganization.

3.    Court: United States Bankruptcy Court for the Middle District of Florida, Orlando Division.

4.    Chapter 11: Chapter 11 of the United States Bankruptcy Code.

5.   Effective Date of Plan:  The date the written order of the Bankruptcy Judge confirming the Plan becomes final and non-appealable.

6.   Interest:  Interest shall mean "simple interest" and not compound interest.

## ARTICLE I

## TREATMENT AND CLASSIFICATIONS OF CLAIMS AND INTERESTS

A.   General Rules of Classification: Generally, a Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of the Class, and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class.  If a Claim qualifies for inclusion in a more specifically defined Class, then the Claim shall be included only in the more specifically defined Class. Notwithstanding anything contained herein to the contrary, if a Claim is not allowed, then the Debtor is not bound by a classification made or implied herein.

B.   **UNIMPAIRED CLAIMS:** The following classes are not impaired:

**Class I – Allowed Administrative Claims**:   Class I consists of claims owed to professionals and the quarterly fees to the United States Trustee's Office.  The professionals employed by the Debtor are Robert B. Branson of the Law Office of Robert B. Branson, P.A. and Bryant and Company, CPA.  Each holder of an Allowed Administrative Claim against the Debtor shall receive on account of such Claim the amount of such holder's Allowed Claim in one cash payment on the Distribution Date or shall receive such other treatment as agreed upon in writing by the Debtor and such holder; provided that: (i) an Administrative Expense representing a liability incurred in the ordinary course of

business by the Debtor may be paid in the ordinary course of business by the Debtor; and (ii) the payment of an Allowed Administrative Claim representing a right to payment under Section 365(b)(1)(A) and Section 365(b)(1)(B) of the Bankruptcy Code may be made in one or more cash payment over a period of twelve (12) months or such other period as is determined to be appropriate by the Court.  All fees to the United States Trustee's Office shall be paid when due. The Debtor shall pay quarterly fees due to the United States Trustee based on the disbursements of the Debtor for the applicable quarter pursuant to 28 U.S.C. § 1930 (a)(6).

**Class II – Priority Tax Claims**:  There are no claims in this class.

    C. **IMPAIRED CLAIMS:**  The following classes are impaired:

**Class III--Allowed Secured Claim (Claim 1) of JPMorgan Chase Bank, N.A.:** JPMorgan Chase Bank, N.A., has filed a secured claim in the amount of $35,496.77, based upon the purchase money security interest it holds on that certain 2008 Chevrolet Silverado truck, VIN: 1GCJK33698F119139.  Chase shall retain its lien on the subject property.  By agreed order (Doc. 114), Debtor shall pay the secured portion of this claim, valued at $31,250.00, at an interest rate of 5.0% per annum, amortized over a five-year period ($589.73 per month), for sixty months.  Such payments shall commence on March 15, 2011, and continue on the same day of the month until paid in full.  Debtor shall otherwise comply with the terms of said agreed order regarding insurance, maintenance, and inspection. The unsecured remaining portion of Claim 1 shall be treated as unsecured and treated as other unsecured claims in Class XX as described below.

**Class IV—Allowed Secured Claim (Claim 2) of GL Funding, Ltd.:** GL Funding, Ltd. has filed a secured claim in the amount of $242.18, based upon Tax Certificate 1288 it

holds on Debtor's real property.  This claim shall be paid in full, including accrued interest @ 16.5%, in twelve payments commencing on the first month after the Effective Date of the Plan.

**Class V—Allowed Secured Claim (Claim 3) of GL Funding, Ltd.:** GL Funding, Ltd. , has filed a secured claim in the amount of $1,290.15, based upon Tax Certificate 1156 it holds on Debtor's real property.  This claim shall be paid in full, including accrued interest @ 9.5%, in twelve payments commencing on the first month after the Effective Date of the Plan.

**Class VI—Allowed Secured Claim (Claim 4) of Bank of America, N.A.:** Bank of America, N.A., has a secured claim in the amount of $51,300.42, based upon the first mortgage it holds on the Debtor's real property located at 602-604 O'Brien Street, Leesburg, Florida.  Bank of America, N.A., has agreed to accept the following treatment of its secured claim: that said claim amount shall be paid in full in 180 equal monthly installment payments ($405.68 per month) at an annual interest of 5.0%, plus amounts necessary to pay ad valorum taxes on the subject property.  All such payments shall commence on the first month after the Effective Date of the Plan.  Bank of America, N.A., shall continue to escrow the amounts paid for taxes and, and any escrow shortage will be added to the principal amount set forth above.  The Debtor shall deposit in a separate escrow account an amount equal to $1/12^{th}$ of the insurance premium, in an amount to be determined in the ordinary course, which then will be paid as it comes due on an annual basis.  The unsecured portion of Claim 4 shall be treated as unsecured and treated as other unsecured claims in Class XX as described below.

**Class VII—Allowed Secured Claim (Claim 5) of Aurora Loan Services, L.L.C.:**

Aurora Loan Services, LLC, has filed a secured claim in the amount of $76,683.44, based upon the first mortgage it holds on the Debtor's property located at 311 South 6th Street, Leesburg, Florida. Aurora Loan Services, LLC, has agreed to accept the following treatment of its secured claim: that the secured portion of its claim is valued at $59,000.00, which shall be paid in full in 288 equal monthly installment payments ($360.73 per month) at an annual interest of 5.25%, plus amounts necessary to pay ad valorum taxes on the subject property. All such payments shall commence on the first month after the Effective Date of the Plan. Aurora Loan Services, LLC, shall continue to escrow the amounts paid for taxes. The unsecured portion of Claim 5 shall be treated as unsecured and treated as other unsecured claims in Class XX as described below. The Debtor shall deposit in a separate escrow account an amount equal to 1/12th of the insurance premium, in an amount to be determined in the ordinary course, which then will be paid as it comes due on an annual basis.

**Class VIII—Allowed Secured Claim (Claim 6) of Lake County Tax Collector:**

Claim has been withdrawn (Doc. # 129).

**Class IX – Allowed Secured Claim (Claim 7) of Lake County Tax Collector:**

Claim has been withdrawn (Doc. # 129).

 **Class X – Allowed Secured Claim (Claim 8) of Lake County Tax Collector:**

Claim has been withdrawn (Doc. # 129).

**Class XI--Allowed Secured Claim (Claim 10) of Bank of America, N.A.:** Bank of America, N.A., has filed a secured claim in the amount of $245,374.45, based upon the first mortgage it holds on the Debtor's property located at 8635 Lojek Road, Cochranton,

Pennsylvania. Bank of America, N.A., has agreed to accept the following treatment of its secured claim: that the secured portion of its claim is valued at $205,000.00, which shall be paid in full in 360 equal monthly installment payments ($1,100.48 per month) at an annual interest of 5.0%, plus amounts necessary to pay ad valorum taxes and insurance on the subject property. All such payments shall commence on the first month after the Effective Date of the Plan. Bank of America, N.A., shall continue to escrow the amounts paid for taxes and insurance. The unsecured remaining portion of Claim 10 shall be treated as unsecured and treated as other unsecured claims in Class XX as described below.

**Class XII--Allowed Secured Claim (Claim 11) of EMC Mortgage Corporation:** EMC Mortgage Corporation, has filed a secured claim in the amount of $137,775.77, based upon the first mortgage it holds on the Debtor's property located at 315 South 2nd Street, Leesburg, Florida. EMC Mortgage has agreed to accept the following treatment of its secured claim: that the secured portion of its claim is valued at $96,000.00, which shall be paid in full in 288 equal monthly installment payments ($586.95 per month) at an annual interest of 5.25%, plus amounts necessary to pay ad valorum taxes and insurance on the subject property. . EMC Mortgage shall continue to escrow the amounts paid for taxes and insurance. All such payments shall commence on the first month after the Effective Date of the Plan. The unsecured remaining portion of Claim 11 shall be treated as unsecured and treated as other unsecured claims in Class XX as described below.

**Class XIII--Allowed Secured Claim (Claim 12) of Wells Fargo Bank, N.A.:** Wells Fargo Bank, N.A., has filed a secured claim in the amount of $97,764.39, based upon the first mortgage it holds on the Debtor's property located at 1218-1220 Sunshine Street,

Leesburg, Florida. Wells Fargo Bank, N.A., has agreed to accept the following treatment of its secured claim: that the secured portion of its claim is valued at $42,750.77, which shall be paid in full in 60 equal monthly installment payments ($811.65 per month) at an annual interest of 5.25%, plus amounts necessary to pay ad valorum taxes on the subject property. All such payments shall commence on the first month after the Effective Date of the Plan. The unsecured remaining portion of Claim 12 shall be treated as unsecured and treated as other unsecured claims in Class XX as described below. The Debtor shall deposit in a separate escrow account an amount equal to $1/12^{th}$ of the insurance premium, in an amount to be determined in the ordinary course, which then will be paid as it comes due on an annual basis. The unsecured portion of Claim 12 shall be treated as unsecured and treated as other unsecured claims in Class XX as described below.

**Class XIV--Allowed Secured Claim (Claim 13) of Wells Fargo Bank, N.A.:** Wells Fargo Bank, N.A., has filed a secured claim in the amount of $101,136.12, based upon the first mortgage it holds on the Debtor's property located at 1214-1216 Sunshine Street, Leesburg, Florida. Wells Fargo Bank, N.A., has agreed to accept the following treatment of its secured claim: that the secured portion of its claim is valued at $38,000.00, which shall be paid in full in 300 equal monthly installment payments ($227.71 per month) at an annual interest of 5.25%, plus amounts necessary to pay ad valorum taxes and insurance on the subject property. Wells Fargo Bank, N.A., shall continue to escrow the amounts paid for taxes and insurance. All such payments shall commence on the first month after the Effective Date of the Plan. All such payments shall commence on the first month after the Effective Date of the Plan. The unsecured remaining portion of Claim 13 shall

be treated as unsecured and treated as other unsecured claims in Class XX as described below.

**Class XV--Allowed Secured Claim (Claim 14) of Wells Fargo Bank, N.A.:** Wells Fargo Bank, N.A., has filed a secured claim in the amount of $226,379.73, based upon the first mortgage it holds on the Debtor's property located at 310 South 6th Street, Leesburg, Florida. Wells Fargo Bank, N.A., has agreed to accept the following treatment of its secured claim: that the secured portion of its claim is valued at $149,000.00, which shall be paid in full in 300 equal monthly installment payments ($960.01 per month) at an annual interest of 6.0%, plus amounts necessary to pay ad valorum taxes on the subject property. All such payments shall commence on the first month after the Effective Date of the Plan. The Debtor shall deposit in a separate escrow account an amount equal to 1/12th of the insurance premium, in an amount to be determined in the ordinary course, which then will be paid as it comes due on an annual basis. All such payments shall commence on the first month after the Effective Date of the Plan. The unsecured remaining portion of Claim 14 shall be treated as unsecured and treated as other unsecured claims in Class XX as described below.

**Class XVI--Allowed Secured Claim (Claim 15) of Bank of America, N.A.:** Bank of America, N.A., has filed a secured claim in the amount of $53,743.01, based upon the first mortgage it holds on the Debtor's property located at 402A-402B South 6th Street, Leesburg, Florida. Bank of America, N.A., has agreed to accept the following treatment of its secured claim: that the secured portion of its claim is valued at $39,692.46, which shall be paid in full in 60 equal monthly installment payments ($753.60 per month) at an annual interest of 5.25%, plus amounts necessary to pay ad valorum taxes on the subject

property.  All such payments shall commence on the first month after the Effective Date of the Plan.  The Debtor shall deposit in a separate escrow account an amount equal to 1/12th of the insurance premium, in an amount to be determined in the ordinary course, which then will be paid as it comes due on an annual basis.  All such payments shall commence on the first month after the Effective Date of the Plan.  The unsecured remaining portion of Claim 15 shall be treated as unsecured and treated as other unsecured claims in Class XX as described below.  The Debtor shall deposit in a separate escrow account an amount equal to 1/12th of the insurance premium, in an amount to be determined in the ordinary course, which then will be paid as it comes due on an annual basis.

**Class XVII—Allowed Secured Claim (Claim 16) of BAC Home Loans Servicing, LP:** BAC Home Loans Servicing, LP, has filed a secured claim in the amount of $87,463.36, based upon the first mortgage it holds on the Debtor's property located at 400-400½ South 6th Street, Leesburg, Florida. BAC Home Loans Servicing, LP, has agreed to accept the following treatment of its secured claim: that the secured portion of its claim is valued at $87,463.36, which shall be paid in full in 300 equal monthly installment payments ($524.12 per month) at an annual interest of 5.25%, plus amounts necessary to pay ad valorum taxes on the subject property.  BAC Home Loans Servicing, LP, shall continue to escrow the amounts paid for taxes. All such payments shall commence on the first month after the Effective Date of the Plan.  The Debtor shall deposit in a separate escrow account an amount equal to 1/12th of the insurance premium, in an amount to be determined in the ordinary course, which then will be paid as it comes due on an annual basis.

**Class XVIII—Allowed Secured Claim (Claim 17) of BAC Home Loans Servicing, LP:** BAC Home Loans Servicing, LP, has filed a secured claim in the amount of $53,141.78, based upon the first mortgage it holds on the Debtor's property located at 1511-1513 West Main Street, Leesburg, Florida.  BAC Home Loans Servicing, LP, has agreed to accept the following treatment of its secured claim: that the secured portion of its claim is valued at $49,957.00, which shall be paid in full in 180 equal monthly installment payments ($395.06 per month) at an annual interest of 5.0%, plus amounts necessary to pay ad valorum taxes and insurance on the subject property.  All such payments shall commence on the first month after the Effective Date of the Plan.  BAC Home Loans Servicing, LP, shall continue to escrow the amounts paid for taxes and insurance, and any escrow shortage will be added to the principal amount set forth above.  The unsecured portion of Claim 17 shall be treated as unsecured and treated as other unsecured claims in Class XX as described below.

**Class XIX—Allowed Secured Claim of BAC Home Loans Servicing, LP:** BAC Home Loans Servicing, LP, has a claim as the holder of that certain note and mortgage, dated March 3, 2006, made and executed between Debtor and Bank of America, N.A., recorded at Book 3125, Page 585-601, of the Public Records of Lake County, Florida, which encumbers Debtor's real property located at 214 North 12th Street, Leesburg, Florida.  BAC Home Loans Servicing, LP has agreed to accept the following treatment of its secured claim: that the secured portion of its claim is valued at $65,000.00, which shall be paid in full in 300 equal monthly installment payments ($389.51 per month) at an annual interest of 5.25%, plus amounts necessary to pay ad valorum taxes and insurance on the subject property.  BAC Home Loans Servicing, LP, shall continue to escrow the

amounts paid for taxes and insurance. All such payments shall commence on the first month after the Effective Date of the Plan. The unsecured remaining portion of this claim shall be treated as unsecured and treated as other unsecured claims in Class XX as described below

**Class XX – Allowed Unsecured Claims:** The holders of such Claims shall receive on account of such claims a pro rata share in sixty equal monthly installments commencing thirty days after the Effective Date of the Plan. If all claims are allowed, the claims are estimated to be $452,000.00. Debtor estimates creditors in this class shall receive $18,000.00 to be divided pro rata according to the amount of each creditor's claim.

        D.      **Impairment Classification Controversies:** If there is a controversy regarding the classifications or impairment of a Claim or Interest, then such controversy shall be determined by this Court after notice and hearing.

## ARTICLE II

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Any executory contract or unexpired lease not specifically addressed in the Plan or specifically assumed pursuant to authorization by the Court on or before the Effective Date shall be deemed rejected pursuant to Section 365 of the Code. Any party asserting a Claim pursuant to Section 365 of the Code arising from the rejection of an executory contract or lease shall file a proof of such claim within thirty days after the entry of an order confirming the Plan.

## ARTICLE III
## ACCEPTANCE OR REJECTION OF PLAN: EFFECT OF REJECTION BY ONE OR MORE CLASSES

    **A.**    <u>**Classes Entitled to Vote.**</u>  Each impaired Class of Claims or Interest shall be entitled to vote separately to accept or reject the Plan.  Any unimpaired Class of Claims or Interests shall not be entitled to vote to accept or reject the Plan.

    **B.**    <u>**Class Acceptance Requirement.**</u>  A Class of Claims shall have accepted the Plan if it is accepted by at least two thirds in amount and more than one-half in number of the Allowed Claims of such class that had voted on the Plan.  A Class of Interest shall have accepted the plan if it is accepted by at least two thirds in amount of the Allowed Interests of such Class that had voted on the Plan.  If any ballot is executed and timely filed by the holder of an Allowed Claim or Interest but does not indicate acceptance or rejection of the Plan, then the ballot shall be deemed to be an acceptance.

    **C.**    <u>**Cramdown.**</u>   If any impaired Class of Claims or Interest shall fail to accept the Plan in accordance with Bankruptcy Code Section 1129(a), then the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

## ARTICLE IV
## IMPLEMENTATION OF THE PLAN

The Debtor will continue to operate the business under current management.  The net operating profits of the Debtor will be used to fund the Plan.  Attached hereto as Exhibit "A" and incorporated herein by reference is Debtor's Proforma evidencing feasibility of the Debtor's plan.

## ARTICLE V
## DISCHARGE OF THE DEBTOR

Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise

provided in Section 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under Section 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedures.

## ARTICLE VI
## GENERAL PROVISIONS

1. Upon confirmation, the Debtor shall be re-vested with its assets and entitled to manage its business without further order of the Court.

2. The payments, distributions and other treatments provided in respect of each allowed claim in this Plan shall be in complete satisfaction, discharge and release of each allowed claim.

3. Except as specifically retained hereunder, all liens upon the Debtor's real and personal property are extinguished and canceled upon the date of confirmation.

4. The Debtor shall act as disbursing agent in connection with the receipt and distribution of funds called for under the terms of the Plan.

5. If any objection is made to the allowance of the claim of any creditor or to its classification and such objection or opposition is pending on the date that payment or distribution is due, payment shall be deferred until an order determining the validity and amount of disputed claims and/or classification are entered and no longer subject to review or appeal. Whereupon, the amount due creditors, without interest thereon, shall be paid.

6. No payment or disbursement shall be made on account of allowance of compensation or any other payment provided for in this Plan until an Order allowing or directing same becomes final in all respects and is no longer subject to review or appeal. Whereupon the payments and distributions to such person, without interest thereon, shall be made; provided however, that an appeal or an Order _inter_ _alia_ allowing compensation to one

person shall not affect payments or distributions to another allowed compensation there under if no appeal is taken from such order insofar as same relates to the second person.

7. In the event the holder of a claim cannot be located by the Debtor for distribution hereunder after reasonable effort, such holder of a claim shall, within one year of the distribution date, make its whereabouts known to the Debtor; otherwise, any distribution to such holder shall be forfeited by the holder entitled thereto and retained by the Debtor and canceled.

8. The Debtor may propose amendments or modifications to this Plan at any time prior to confirmation. After confirmation, the Debtor may with the approval of the Court, and without notice to all creditors so long as it does not materially or adversely affect the interests of creditors or the estate, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Order of Confirmation in such manner as may be necessary to carry out the provisions and intent of this Plan.

9. The Debtor may file an injunction in this case should a creditor attempt to collect a claim not in accordance with the terms of this Plan of Reorganization.

## ARTICLE VII
## JURISDICTION OF THE COURT

The Court shall retain jurisdiction until the case is concluded and terminated. Without limiting the generality of the foregoing, the Court will also retain jurisdiction of the case until the conclusion of the following:

1. The classification of the claim of any creditor or the re-examination for claims which have been allowed for purposes of voting and determination of such objections as may be filed by creditors' claims.

2. The determination of all causes and disputes regarding title to assets of the estate and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to an action pending as of the date of confirmation, between Debtor-In-Possession and any other party, including but not limited to any right of the Debtor-In-Possession to recover assets pursuant to the provisions of Title 11 of the U.S.C.; provided however, that such actions be brought with in thirty (30) days of the effective date of the order confirming the plan.

3. The enforcement of all causes of action which may exist on behalf of the Debtor-In-Possession, if brought before the entry of final decree.

4. The determination of allowance of compensation for those parties entitled to compensation in accordance with Title 11 of the United States Bankruptcy Code; provided however, that such determination is to be made within thirty (30) days of the effective date of the order confirming the Plan.

5. The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the Order of Confirmation as may be necessary to carry out the purpose and intent of this Plan.

6. The modification of this Plan after confirmation, pursuant to the Bankruptcy Rules and Title 11 of the Bankruptcy Code.

7. To enforce and interpret the terms and conditions of this Plan.

8. To enter any Order, including injunctive relief, to enforce the title, rights and power of the Debtor-In-Possession and to impose such limitation, restrictions, terms and conditions of such title, rights and power as the Court may deem necessary; provided

however, that any actions brought under this paragraph must be brought within thirty (30) days of the effective date of the order confirming Plan.

9. To enter an Order concluding and terminating this case.

Dated this 3rd day of June, 2011.


/s/ Jeffrey Allan Hartzell  
Jeffrey Allan Hartzell  
Debtor in Possession

/s/ Robert B. Branson  
ROBERT B. BRANSON, ESQUIRE  
Law Office of Robert B. Branson, PA  
1501 East Concord Street  
Orlando, Florida  32803  
(407) 894-6834  
Florida Bar No.: 800988  
Attorney for Debtor in Possession

**Jeffrey Hartzell**
**5 Year Projected Cash Flow**
**2011-2015**

|  | Estimate 2011 Total | Estimate 2012 Total | Estimate 2013 Total | Estimate 2014 Total | Estimate 2015 Total |
|---|---:|---:|---:|---:|---:|
| **Rental Income** | | | | | |
| Rental Income | $114,000.00 | $120,000.00 | $120,000.00 | $120,000.00 | $120,000.00 |
| Add'l Rental Income (PA Prop/Mineral rights | 9,600.00 | 14,400.00 | 14,400.00 | 14,400.00 | 14,400.00 |
| Child Support | 1,424.00 | 2,136.00 | 2,136.00 | 2,136.00 | 2,136.00 |
| | - | - | - | - | - |
| | - | - | - | - | - |
| **Total Rental Income** | 125,024.00 | 136,536.00 | 136,536.00 | 136,536.00 | 136,536.00 |
| **Household Income** | | | | | |
| Wages from Eagle Express | 33,683.97 | 33,600.00 | 34,000.00 | 34,000.00 | 35,000.00 |
| Interest Income | 1.20 | 1.44 | 1.44 | 1.44 | 1.44 |
| | - | - | - | - | - |
| **Total Household Income** | 33,685.17 | 33,601.44 | 34,001.44 | 34,001.44 | 35,001.44 |
| **Total Income** | 158,709.17 | 170,137.44 | 170,537.44 | 170,537.44 | 171,537.44 |
| **Rental Expenses** | | | | | |
| Advertising | 1,404.47 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| Repairs & Maintenance | 41,748.33 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 |
| Insurance-rental property | 843.00 | 900.00 | 920.00 | 940.00 | 960.00 |
| Management Company Fee | 9,480.16 | 10,824.00 | 10,824.00 | 10,824.00 | 10,824.00 |
| Accounting | 6,194.07 | 1,035.00 | 1,035.00 | 1,035.00 | 1,035.00 |
| Legal | 11,039.00 | | | | |
| Vehicle Expense | 5,310.39 | 5,500.00 | 5,800.00 | 5,900.00 | 6,000.00 |
| Bank Charges | 550.00 | 432.00 | 432.00 | 432.00 | 432.00 |
| Realestate Taxes | 14,400.00 | 15,000.00 | 15,200.00 | 15,300.00 | 15,400.00 |
| Postage | 253.48 | 300.00 | 300.00 | 300.00 | 300.00 |
| Utilities | 1,192.94 | | | | |
| Trustee Fees | 975.00 | | | | |
| Misc expense | 276.61 | - | - | - | - |
| **Total Rental Expenses** | 93,667.45 | 47,191.00 | 47,711.00 | 47,931.00 | 48,151.00 |
| **Household Expense** | | | | | |
| Charitable Contributions | 6,001.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 |
| Food/clothing/utilities | 19,759.94 | 15,200.00 | 15,300.00 | 15,400.00 | 15,500.00 |
| Vehicle Expense | 11,226.03 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 |
| **Total Household Expenses** | 36,986.97 | 33,200.00 | 33,300.00 | 33,400.00 | 33,500.00 |
| **Total Expenses** | 130,654.42 | 80,391.00 | 81,011.00 | 81,331.00 | 81,651.00 |
| **Net Income (Loss) Before Debt Service** | **$ 28,054.75** | **$ 89,746.44** | **$ 89,526.44** | **$ 89,206.44** | **$ 89,886.44** |
| **Debt Service Beginning 10/01/11** | (21,450.00) | (85,800.00) | (85,800.00) | (85,800.00) | (85,800.00) |
| **Net Income (Deficit)** | **$ 6,604.75** | **$ 3,946.44** | **$ 3,726.44** | **$ 3,406.44** | **$ 4,086.44** |